UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | § § § § § § § | |
| v. | | CIVIL NO. 4:21-CV-689-SDJ |
| CASSIA R. RICEHOUSE, ET AL. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Liberty Mutual Insurance Company's Motion for Summary Judgment. (Dkt. #17). After the Court granted three extensions of time for a response while the parties engaged in settlement discussions, Defendants Cassia R. Ricehouse and Shawn M. Ricehouse failed to respond to the motion. Having considered the motion, the accompanying exhibits, and the applicable law, the Court concludes that the motion should be **GRANTED**.

### I. BACKGROUND

On July 9, 2015, contractors Cassia R. Ricehouse and Shawn M. Ricehouse (collectively, "the Ricehouses") executed an "Indemnity Agreement" with Liberty Mutual Insurance Company ("Liberty") on behalf of their now dissolved company, CR Mechanical, LLC ("CRM"), for construction projects in Texas.[1] Under the agreement, Liberty, as surety, would issue performance and payment bonds to contractors AMG – S&P, A Joint Venture ("AMG") and Allbrite Construction of Texas, Inc. ("Allbrite"). In return, CRM agreed to indemnify Liberty for losses that could occur by reason of

---

[1] At the time of its execution, the agreement was made with Liberty's predecessor-in-interest, Developers Surety and Indemnity Company ("Developers"). The Indemnity Agreement at issue binds Developers and its "successors and assigns." (Dkt. #17-2 at 2). Because Liberty is Developers' successor, the Court refers to both Liberty and Developers as "Liberty."

executing the bonds. Indemnity agreements, such as this one, ensure that contractors, subcontractors, and laborers are paid for work performed in the event of nonperformance by the primary contract holder. In part, the indemnity agreement at issue states:

> Indemnitors agree to fully and continuously indemnify [the] Surety against any and all Loss or expenses of every kind or nature, including, without limitation, those incurred: (i) by reason of having executed or procured the execution of any Bond, (ii) by reason of the failure of any Indemnitor to perform or comply with the covenants and conditions of this Agreement, and (iii) enforcing any of the covenants and conditions of this Agreement. Also, Indemnitors agree to indemnify [the] Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise.

(Dkt. #17-2 at 3).

In reliance on the Indemnity Agreement, Liberty then issued payment and performance bonds to AMG and Allbright as requested by the Ricehouses. After executing the bonds, Liberty received multiple claims from AMG, Allbright, subcontractors, and suppliers alleging that CRM failed to (1) complete or properly perform certain work required under the contracts and (2) pay for work performed and materials used under the contracts. Liberty hired construction consultants and attorneys to independently investigate the validity of each claim.

After completing its investigations, Liberty settled the claims by paying AMG, Allbright, and the various subcontractors and suppliers. On December 7, 2020, Liberty issued a demand letter to the Ricehouses requesting indemnification per the

terms of the Indemnity Agreement. After the Ricehouses failed to indemnify Liberty, this lawsuit ensued.

## II. LEGAL STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). If the moving party presents a motion for summary judgment that is properly supported by evidence, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmoving party "must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). To defeat a motion for summary judgment, the nonmovant must present "significant probative evidence demonstrating the existence of a triable issue of fact." *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citations omitted). Thus, "mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden." *Pickett v. IceCold2, LLC*, No. 4:17-CV-00666, 2019 WL 1063369, at *2 (E.D. Tex. Mar. 6, 2019).

Further, as noted in the Court's local rules, in ruling on motions for summary judgment, the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the responsive brief filed in opposition to the motion, as supported by proper summary judgment evidence." Local Rule CV-56(c).

### III. DISCUSSION

The Court applies Texas law to the instant case as it involves a breach of contract dispute based on diversity jurisdiction. *Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)) ("When jurisdiction is based on diversity, we apply the substantive law of the forum state."). Under Texas law, Liberty must establish five elements to enforce the Indemnity Agreement: (1) "a contractual indemnity agreement existed," (2) "the agreement obligated [the Ricehouses] to indemnify [Liberty] in the event claims were made on the bonds issued," (3) "claims were made on the bonds issued," (4) "all conditions precedent for recovery had occurred, been performed, waived, or excused," and (5) Liberty "has been damaged." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995) (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 696 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.)). Liberty has established each element, and thus has proven liability against the

4

Ricehouses.[2] The Ricehouses also raise various affirmative defenses in their answer—none of which has merit. Accordingly, Liberty is entitled to summary judgment on its indemnification claim. The Court first addresses Liberty's proof on the issue of liability, and then turns to the Ricehouses' affirmative defenses. Finally, the Court addresses damages and interest owed.

### A. Liberty Has Established the Ricehouses' Liability Under the Indemnity Agreement.

#### i. A Valid Indemnity Agreement Exists.

The parties agree that the Indemnity Agreement was executed between the Ricehouses and Liberty on July 9, 2015. (Dkt. #17-2); (Dkt. #1 ¶ 8); (Dkt. #4 ¶ 8). To be enforceable, the agreement's express language must hold the indemnitors liable to the surety. *See English v. Century Indem. Co.*, 342 S.W.2d 366, 369 (Tex. Civ. App.—San Antonio 1961, no writ); *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.). The agreement between the Ricehouses and Liberty satisfies this requirement as the indemnity language clearly obligates the Ricehouses to indemnify Liberty for losses incurred as a result of executing the bonds: "Indemnitors agree to fully and continuously indemnify [the] Surety against *any and all* Loss or expenses of every kind of nature . . . without limitation." (Dkt. #17-2 at 3) (emphasis added). As the agreement triggers once Liberty, as surety, issues the bonds, the agreement became enforceable once Liberty executed the performance

---

[2] Because the Ricehouses failed to respond to the motion for summary judgment, the Court accepts as true all of the facts presented by Liberty that are "claimed and supported by admissible evidence." Local Rule CV-56(c).

and payment bonds. (Dkt. #17-2); (Dkt. #1 ¶ 6); (Dkt. #4 ¶ 6). Thus, Liberty has established that it has a valid and enforceable indemnity agreement with the Ricehouses.

### ii. The Indemnity Agreement Requires the Ricehouses to Indemnify Liberty for Claims Made on the Bonds Issued.

Turning to the second requirement, Liberty has established that the Indemnity Agreement obligates the Ricehouses to indemnify Liberty for claims made on the bonds. Under Texas law, courts look to the plain language of a contract to construe the parties' intent. *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016). If that language has a "certain or definite meaning" no further inquiry is necessary. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Such is the case here.

The language of the agreement is clear—the Ricehouses must indemnify Liberty for claims made on the bonds. As described above, *see supra* Section I, the language of the indemnity agreement obligates the Ricehouses to indemnify Liberty for "Loss[es]." (Dkt. #17-2 at 2). "Loss[es]" are defined, in part, as "[l]iability incurred or amounts paid in satisfaction or settlement of any claims, demands, damages, costs, lawsuits, legal or administrative proceedings, awards or judgments relating to [the] Principal's actual or alleged nonperformance of any obligation covered by a Bond." (Dkt. #17-2 at 2). As the agreement notes that any resolution of such losses on the part of the surety is "binding upon . . . Indemnitors," Liberty has established that the

agreement requires the Ricehouses to indemnify Liberty for settlements of claims covered by the bonds. (Dkt. #17-2 at 3).

### iii. Claims Were Made Against the Bonds.

Liberty also satisfies the third requirement that claims were made against the bonds. As noted in the sworn affidavit of Thomas H. Duke, Liberty's administrator, claims were made by AMG, Allbright, subcontractors, and suppliers against the AMG and Allbright payment and performance bonds covered by the Indemnity Agreement. (Dkt. #17-1 ¶ 4). As described in Mr. Duke's affidavit, AMG initiated an arbitration claim against CRM and Liberty with respect to the AMG Performance Bond; Allbright filed suit against CRM and Liberty with respect to the Allbright Performance Bond; and "numerous subcontractors and suppliers" asserted claims against Liberty with respect to the AMG and Allbright Payment Bonds. (Dkt. #17-1 ¶ 4). Given the Ricehouses' failure to respond to the summary judgment motion, the Court accepts as true the uncontroverted evidence contained in Mr. Duke's affidavit. Thus, the requirement that claims were made against the bonds is also satisfied.

### iv. All Conditions Precedent Have Occurred.

Liberty has similarly established the fourth requirement that all conditions precedent in the Indemnity Agreement have occurred. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998) ("A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied."). Four conditions precedent appear in the Indemnity Agreement, all of which precede the requirement of payment by the indemnitor to the surety: (1) the

bonds are issued, (2) claims are made against the bonds, (3) those claims are settled by the surety, and (4) an itemized statement of losses is provided to the indemnitor. *See* (Dkt. #17-2). Each of these conditions has been satisfied.

As stated above, AMG and Allbright payment and performance bonds were issued, and claims were made against those bonds by various interested parties. *See supra* Sections III(A)(i)-(iii). Under the Indemnity Agreement, Liberty, as surety, had "*sole and absolute discretion* [to] pay, compromise, defend, settle, investigate, appeal or otherwise handle or resolve any claim, demand, suit, arbitration demand, judgment, award or expense arising out of or related to any Bond." (Dkt. #17-2 at 3) (emphasis added). It did so by settling each of these claims. (Dkt. #17-1 ¶ 4); (Dkt. #17-5, #17-6).

Finally, the Indemnity Agreement states that "[a]n itemized statement, sworn to by any employee of the Surety, or a copy of a check or draft or other evidence of such payment or compromise, shall be prima facie evidence of the fact and amount of any Loss and liability of Indemnitors for it under this Agreement." (Dkt. #17-2 at 3). Prima facie evidence clauses are commonly enforced in Texas courts, and this Court will follow suit here. *See, e.g.*, *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 282–83 (Tex. App.—Dallas 1992, writ denied) ("The indemnity agreement provides that 'an itemized statement of loss and expense incurred by surety, sworn to by an officer of surety, shall be prima facie evidence of the fact and extent of the liability of [indemnitors] to surety in any claim or suit by surety against [indemnitors].' This provision is enforceable."). The sworn affidavit of Mr. Duke, which details the

8

claims made against the bonds and the resulting losses, satisfies this precondition as prima facie evidence of the surety's losses. (Dkt. #17-1, #17-7). Accordingly, all conditions precedent were satisfied under the Indemnity Agreement.

### v. Liberty Suffered Damages.

Finally, Liberty has established that it suffered damages based on its issuance of the bonds as evidenced by Mr. Duke's sworn affidavit and Liberty's itemized statement of losses—both produced by Liberty in support of its motion for summary judgment. (Dkt. #17-1 ¶ 4); (Dkt. #17-7). Accordingly, Liberty has established that it incurred liability under the Indemnity Agreement.

## B. The Ricehouses' Defenses Fail.

Having determined that Liberty has established the Ricehouses' liability under the Indemnity Agreement, the Court turns to the Ricehouses' affirmative defenses as articulated in their answer. (Dkt. #4 at 4–7). "The burden of proving an affirmative defense is on the party asserting it." *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 58 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994)). To defeat a motion for summary judgment based on an affirmative defense, the party asserting the defense must present "sufficient evidence to raise a fact question for each of the elements" of the defense. *Am. Petrofina, Inc.*, 887 S.W.2d at 830. The Ricehouses fail to do so with respect to each asserted affirmative defense.

*First*, the Ricehouses contend that any damages incurred by Liberty were "wholly and completely unavoidable and without any negligence on the part of

Defendants." (Dkt. #4 ¶ 20); *see also* (Dkt. #4 ¶ 31) (arguing that "no judgment has been obtained establishing . . . the negligence or fault of any alleged tortfeasor for the claims Plaintiff has alleged to have paid any sums towards"). However, negligence on the part of the indemnitor—the Ricehouses—is not required for the indemnity clause to trigger. (Dkt. #17-2 at 3). The term "negligence" does not appear in the "Indemnification" clause of the Indemnity Agreement, and the Ricehouses present no rationale for why such a requirement should be read into the provision. (Dkt. #17-2 at 3). This defense fails.

*Second*, the Ricehouses contend that the claims against the bonds and Liberty's settlement of such claims were "wholly beyond the scope and control of Defendants and for which Defendants are not responsible." (Dkt. #4 ¶ 20); *see also* (Dkt. #4 ¶ 33) ("Defendants deny that they breached any duty Plaintiff claims is owed to it."). Yet, again, the Ricehouses do not establish how their failure to (1) complete work laid out in contracts with sub-contractors and (2) pay sub-contractors and laborers for work performed is "wholly beyond . . . [their] control." (Dkt. #4 ¶ 20). To the contrary, the Ricehouses' failure to perform contractual obligations or pay for work performed was fully within their control and triggered the claims against the bonds that lead to Liberty's demand for indemnification. Thus, this defense similarly fails.

*Third*, the Ricehouses make a broad, unsubstantiated claim that they "have no liability or responsibility for any sums Plaintiff has allegedly paid to other parties" and are "not liable for Plaintiff's alleged claims." (Dkt. #4 ¶¶ 28–29); *see also* (Dkt #4 ¶ 31) (arguing that "no judgment has been obtained establishing . . . that Defendants

10

were responsible for any acts or omissions which would have required Plaintiff to make any payments under the alleged bonds or indemnity agreement"). On the other hand, they also argue there is a "bona fide controversy" relating to whether Liberty is entitled to "any sums . . . under [the] agreement between the Parties." (Dkt. #4 ¶ 30). These conclusory, unsupported claims have no merit as Liberty has established a right to indemnification for claims settled against the bonds. *See supra* Section III(A).

*Fourth*, the Ricehouses argue that "Plaintiff's alleged damages, if any, were not reasonable or necessary." (Dkt. #4 ¶ 21). But the Ricehouses fail to present *any* evidence establishing *how* the damages at issue are not reasonable or not necessary. Without such evidence, the Court can only review the record before it. Based on that record—including Mr. Duke's sworn affidavit—the Court finds no basis to question the reasonableness or necessity of the damages.

*Fifth*, the Ricehouses contend that "Plaintiff has not suffered any alleged injuries or damages as a result of any alleged acts or omissions of Defendants." (Dkt. #4 ¶ 32). As described herein, *see supra* Section III(A)(v), this unsupported argument is groundless and contrary to the record.

*Sixth*, the Ricehouses argue that damages owed to Liberty, if any, must be limited in two ways. First, the Ricehouses contend that they are "entitled to a credit or offset for any and all sums Plaintiff has received." (Dkt. #4 ¶ 22). And second, they claim that their liability "for any such recovery should be limited to their percentage of comparative responsibility." (Dkt. #4 ¶ 23). As to the former, the Ricehouses

11

present no evidence of payments made to Liberty to satisfy Liberty's losses. Thus, they present no basis for a credit or offset. And as to the latter, the Ricehouses' "responsibility" argument is wholly inapposite in the context of an indemnification agreement where an indemnitor pays the surety for amounts the indemnitor itself was responsible for. These defenses similarly fail.

*Seventh*, the Ricehouses assert that Liberty had an obligation to "mitigate its damages." (Dkt. #4 ¶ 25). Not so. The indemnity agreement expressly waives "any defense to [the Ricehouses'] obligations under this Agreement arising from or related to an alleged failure to mitigate by the Surety." (Dkt. #17-2 at 7). Accordingly, this defense fails as well.

*Eighth*, the Ricehouses contend that "Plaintiff's claims fall outside of the statute of limitations." (Dkt. #4 ¶ 26). Under Texas law, the statute of limitations for a breach of contract suit is four years and begins to run "after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.004(a); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (explaining that breach of contract claims "fall under the four-year statute of limitations"). The Indemnity Agreement states that a claim under the contract accrues "upon the date of the last item of Loss paid by [the] Surety on any Bond covered by this Agreement." (Dkt. #17-2 at 6). Based on the itemized statement of losses, Liberty made the last payment of Loss on November 30, 2020. (Dkt. #17-7 at 4). As the Ricehouses failed to respond to the motion, the Court accepts Liberty's spreadsheet as undisputed fact. Liberty filed the instant suit on September 2, 2021, less than a year after the November 30

payment. (Dkt. #1). Because Liberty filed suit less than four years after payment of the last item of Loss, its claim is squarely within the statute of limitations. This defense also fails.

*Ninth*, the Ricehouses argue that "Plaintiff has waived its subrogation rights." (Dkt. #4 ¶ 27). But waiver is a distinct affirmative defense predicated on a party's intentional relinquishment of a known right or intentional conduct that evinces a relinquishment of that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). The Ricehouses' brief statement of this affirmative defense presents no evidence that Liberty waived its right to indemnification nor that its intentional acts establish such waiver. Thus, this defense, like the others, fails.

*Tenth*, the Court addresses the Ricehouses' final affirmative defense, namely that prejudgment interest should be limited per the Texas Finance Code, in its assessment below of interest owed. *See infra* Section III(C).

**C. Damages and Interest Owed**

Having determined that Liberty has established the Ricehouses' liability under the Indemnity Agreement, and that the Ricehouses' affirmative defenses fail, the Court turns to the appropriate amount of damages and interest owed. As to damages, the Court will award damages based on Liberty's itemized statement of losses, which, when added together, amounts to $1,246,138.74. (Dkt. #17-7). This amount similarly appears in Mr. Duke's sworn affidavit as Liberty's total damages.[3] (Dkt. #17-1 ¶ 4).

---

[3] The Court notes that Mr. Duke's affidavit contains an incorrect breakdown of the losses incurred—$239,500.00 to settle the performance bond claims; $890,998.78 to settle the payment bond claims; and $121,516.51 for attorney's fees and consultants to investigate the

13

As to interest, under Texas law prejudgment interest is available in breach of contract cases, such as this one. *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). The Indemnity Agreement states that the surety, Liberty, must be indemnified for "[i]nterest from the date [the] Surety pays any Loss at the rate of 12% per annum or the maximum rate permitted in the jurisdiction in which this Agreement is enforced, if less." (Dkt. #17-2 at 2). The Court applies the parties' contractual agreement regarding prejudgment interest insofar as it is consistent with Texas law. *See Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1095 (5th Cir. 1996) ("Under Texas law, prejudgment interest may be awarded under either contractual or equitable theories. . . . Judgments based on contracts earn interest at the rate specified in the contract.") (citations omitted).

Under Texas law, a contractual interest rate is enforceable—i.e., not usurious—as long as it does not exceed 10%. TEX. CONST. art. XVI, § 11 ("The Legislature shall have authority to define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious[.]"); TEX. FIN. CODE § 302.001(b) ("The maximum rate or amount of interest is 10 percent a year except as otherwise provided by law. A greater rate of interest than 10 percent a year is usurious unless otherwise provided by law."); *see also Garza v. DHI Mortg. Co.*, No. 4:19-CV-00780-SDJ-CAN, 2020 WL 7700620, at *6

---

claims—as when added together, these three numbers equal $1,252,015.29, not $1,246,138.74. (Dkt. #17-1 ¶ 4).

14

(E.D. Tex. Nov. 12, 2020), *report and recommendation adopted*, No. 4:19-CV-780, 2020 WL 7698832 (E.D. Tex. Dec. 28, 2020) ("The Texas Finance Code provides that "[t]he maximum rate or amount of interest is 10 percent a year except as otherwise provided by law. A greater rate of interest than 10 percent a year is usurious unless otherwise provided by law."") (quoting TEX. FIN. CODE § 302.001(b)).

Here, the Indemnity Agreement's 12% rate exceeds Texas's 10% cap, and thus, per the agreement, a 10% prejudgment interest rate applies. Consistent with the agreement, that interest accrues "from the date [the] Surety pays any Loss." (Dkt. #17-2 at 2). Based on Liberty's itemized statement of losses, it paid its first loss on September 5, 2017. (Dkt. #17-7 at 2). Accordingly, the 10% prejudgment interest accrues from that date. Considering the foregoing, prejudgment interest on Liberty's award is $341.41 per day on Liberty's award of $1,246,138.74. A total of 1,974 days passed from September 5, 2017, to the day preceding the date of the Final Judgment. Accordingly, Liberty is awarded $663,018.22 in prejudgment interest.

As to postjudgment interest, federal law governs the postjudgment interest rate. *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). The federal postjudgment interest rate is governed by 28 U.S.C. § 1961(a), which sets the rate at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment. For the week ending January 27, 2023, the federal rate is 4.69%. Therefore, the Court awards postjudgment interest to Liberty at a rate of 4.69% from the date of the entry of the Final Judgment.

In sum, the Court awards Liberty $1,909,156.96 in total damages and prejudgment interest, together with postjudgment interest as defined herein. Cassia R. Ricehouse and Shawn M. Ricehouse will be jointly and severally liable for these amounts.

## IV. CONCLUSION

For the foregoing reasons, Liberty's Motion for Summary Judgment, (Dkt. #17), is **GRANTED** as to the liability of Cassia R. Ricehouse and Shawn M. Ricehouse, and as to all damages.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that Cassia R. Ricehouse and Shawn M. Ricehouse are jointly and severally liable for, and Liberty is entitled to recover, each of the following: (1) Liberty's actual damages in the amount of $1,246,138.74; (2) prejudgment interest in the amount of $663,018.22; and (3) postjudgment interest at a rate of 4.69% from the date of the entry of the Final Judgment in this case.

The Court will enter its final judgment as to Cassia R. Ricehouse and Shawn M. Ricehouse by separate order.[4]

---

[4] "[U]nder Texas law, attorney's fees and litigation expenses [are recoverable if] provided for by statute or by contract between the parties." *Tony Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310 (Tex. 2006)). Here, the Indemnity Agreement includes language relating to attorney's fees. (Dkt. #17-2 at 3) ("Also, Indemnitors agree to indemnify [the] Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise."). Any request for attorney's fees referenced in the agreement can be brought under Federal Rule of Civil Procedure 54(d)(2). *See Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039–40 (5th Cir. 2014) (holding that "motions for attorney's fees provided by contract are permissible under Rule 54(d)(2)").

**So ORDERED and SIGNED this 1st day of February, 2023.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE